UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSEPH A. FLEMING, | } | |
| Plaintiff, | } | |
| vs. | } | Case No. 1:05CV01333 |
| FORD MOTOR COMPANY, | } | JUDGE: Richard W. Roberts |
| Defendant. | } | |

**DEFENDANT AND COUNTERCLAIM PLAINTIFF
FORD MOTOR COMPANY'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A)**

Pursuant to 28 U.S.C. § 1404(a), Defendant and Counterclaim Plaintiff Ford Motor Company ("Ford") files its Motion to Transfer this case to the United States District Court for the Eastern District of Michigan.  As more fully set forth in its accompanying brief, at least the following facts warrant a transfer of this case:

- This district is inconvenient to plaintiff and Ford, none of which reside in the District of Columbia.  Ford's witnesses who have knowledge about the accused product, namely its design, development, operation, and purchase, reside and work in Michigan.

- Many third party witnesses who will be likely will be called upon to testify by Ford at trial, including Delphi Corporation, the supplier of the accused product, and Mr. David Fu, who plaintiff contends misappropriated his invention on behalf of Ford, reside in Michigan.

- Ford's principal place of business and headquarters are in Michigan.

- Ford's engineering and financial documents relating to the accused products are located in Michigan.
- No witnesses with knowledge related to the accused product or matters connected to this suit live or work in the District of Columbia.
- Judicial efficiency favors transfer of the case to Michigan. The Federal Court for the Eastern District of Michigan, namely Judge Lawrence Zatkoff, has previously heard and resolved another patent infringement case involving the accused product and is thereby already familiar with the accused technology.

WHEREFORE, Ford requests that the Court exercise its discretion and transfer this case to the United States District Court for the Eastern District of Michigan in the interests of convenience to the parties and witnesses and in the interest of judicial efficiency. Ford requests that oral argument be scheduled for this motion at a time and date to be set by the Court. Counsel for Ford has discussed the present motion with opposing counsel and could not obtain opposing counsel's consent to the present motion. Likewise, opposing counsel could not represent to counsel for Ford that it would not oppose the present motion.

KENYON & KENYON

By: _____
John R. Hutchins
Bar No. 456,749
500 K. Street, N.W., Suite 700
Washington, D.C. 20005
Phone: (202) 220-4217

*Attorneys for Defendant/Counterclaim Plaintiff Ford Motor Company*

Dated November 2, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSEPH A. FLEMING, | } | |
| Plaintiff, | } | |
| vs. | } | Case No. 1:05CV01333 |
| FORD MOTOR COMPANY, | } | JUDGE: Richard W. Roberts |
| Defendant. | } | |

**DEFENDANT AND COUNTERCLAIM PLAINTIFF
FORD MOTOR COMPANY'S BRIEF IN SUPPORT OF
<u>ITS MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A)</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................................2

    A.    The Accused Product .................................................................................................2
    B.    Plaintiff Joseph Fleming Lives in Arizona ................................................................2
    C.    Ford is Located in Michigan ......................................................................................3
    D.    The Accused Product Supplier, Delphi Corporation, Resides
          in Michigan ................................................................................................................4
    E.    A Purportedly Critical Witness Relating to Plaintiff's Allegations Against
          Ford Likely Resides in Michigan ..............................................................................4

III.    ARGUMENT ........................................................................................................................5

    A.    The Eastern District of Michigan is the Most Convenient Venue for
          the Party Witnesses ....................................................................................................7
    B.    Virtually All of the Pertinent Documents are Located In and Around
          the Eastern District of Michigan ................................................................................9
    C.    Compulsory Process Available in the Eastern District of Michigan
          Will be Needed to Compel Attendance of A Critical Unwilling Witness ...........9
    D.    The Expense of Willing Witnesses Will be Much Higher to
          Participate in a Suit Outside of the Eastern District of Michigan ........................10
    E.    Comparison of the Relative Court Dockets Favor Transfer ...............................12
    F.    Other Considerations and Judicial Efficiency Favor Transfer of the
          Case to the Eastern District of Michigan ................................................................12

IV.    CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Biochem Pharma, Inc. v. Emory University,* 148 F.Supp.2d 11 (D.D.C. 2001) ............................. 5

*Coloplast A/S v. Amoena Corp.*, 25 U.S.P.Q.2d (BNA) 1549 (S.D.N.Y. 1992) ......................... 11

*Hernandez v. Graebel Van Lines*, 761 F.Supp. 983 (E.D.N.Y. 1991) ......................................... 13

\**Jumpit, AS v. Why ASAP, LLC,* 2005 WL 607914, \*2 (D.D.C. 2005) ..................................... 5, 6

\**Pyrocap Int'l Corp. v. Ford Motor Co.,* 259 F. Supp.2d 92 (D.D.C. 2003) ....................... 6, 7, 10

*Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48 (D.D.C. 2000) ....................................................... 12

*Season Savings Bank, FSB v. Foremost Financial Services Corp.*
   No. 89-244-R, 1989 U.S. Dist. LEXIS 18062 (E.D. Va. June 23, 1989) ................................. 13

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) .................................................................. 6

\**U.S. ex rel. Prevensik v. U.S.P.T.O*, 2005 WL 691875 \* (D.D.C. 2005) .............................. 6, 13

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ................................................................................. 5

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................................... 1, 5

I. **INTRODUCTION**

Pursuant to 28 U.S.C. § 1404(a), Defendant/Counterclaim Plaintiff Ford Motor Company ("Ford") requests transfer of this case to the Eastern District of Michigan. This patent infringement case has no connection to this forum. Plaintiff Joseph Fleming ("Plaintiff" or "Fleming") is not a resident here. Ford and critical third party witnesses reside in Michigan.

This action could have and should have been brought in the Eastern District of Michigan. At least the following facts warrant transfer of this case:

- This district is inconvenient to Fleming and Ford, neither of which resides in the District of Columbia. All Ford employees who have knowledge about the accused product, namely its design, operation, testing and purchase, reside and work in southeastern Michigan.

- Many critical third party witnesses, who will likely be called upon to testify at trial, including Delphi Corporation, the supplier of the accused product, and Mr. David Fu, the individual Fleming contends stole his invention for the benefit of Ford, reside and work in Michigan.

- Ford's principal place of business and headquarters are in Michigan.

- Ford's records, including its engineering, marketing, and financial documents for the accused product are located in Michigan.

- No event leading to Ford's use of the accused product in its vehicles occurred in the District of Columbia.

Transfer of this case to Michigan is appropriate and warranted under 28 U.S.C. § 1404(a), which allows the transfer of a case to another district in which the action might have been brought, for the convenience of the parties and witnesses and in the interest of justice. As

explained more fully below, each of the factors to be considered in a Section 1404(a) analysis heavily favors transfer to the Eastern District of Michigan. This Court should therefore exercise its discretion and transfer this case for the convenience of the parties and witnesses and in the interest of justice.

## II.   FACTUAL BACKGROUND[1]

### A.   The Accused Product

According to Plaintiff, the product accused of patent infringement is the seat occupant classification sensor ("OCS") system used by Ford on select vehicle platforms (the "Accused Product"). Olson Decl. Ex. 3, ¶¶ 2, 3. The OCS comprises a silicone gel-filled bladder mounted between the passenger seat cushion foam and pan, a non-adjustable pressure sensor, and an electronic control unit that is mounted to the seat frame. Olson Decl. ¶ 6. Pressure exerted on the seat by an occupant is transferred to the bladder, sensed by the pressure senor, and converted to a voltage value. *Id.* The pressure sensor communicates the voltage to the electronic control unit, which evaluates the voltage and other inputs from the vehicle to determine an occupant classification. *Id.* The control unit communicates the occupant classification data to the vehicle's restraint control module, which may disable the use of passenger side airbags in certain circumstances. *Id.*

### B.   Plaintiff Joseph Fleming Lives in Arizona

Plaintiff is an individual residing in Catalina, Arizona. Complaint, ¶ 1. Fleming and his wife, Jo Fleming, are the alleged inventors of U.S. Patent No. 5,877,677 (the "'677 patent").[2]

---

[1] The facts set forth in this motion are supported by the Declaration of William Olson, filed concurrently herewith. Reference to the Declaration of William Olson and the exhibits attached thereto are designated as "Olson Decl. ¶ _" or "Olson Decl. Ex. _," respectively.

[2] The '677 patent also lists Lawrence E. Fleming as an inventor. Olson Decl. Ex. 1. Plaintiff has represented to Ford that Lawrence Fleming is deceased. Olson Decl. Ex. 3, ¶ 1.

2

See Ex. 1. Catalina is a city located outside Tucson, Arizona. By the Rand McNally mileage chart, Tucson to Detroit is 2,042 miles; Tucson to Washington D.C. is 2,278 miles. Olson Decl. Ex. 5.

Fleming contends that he invented a particular system and method directed to an air bag system that restricts activation of an air bag to situations in which the weight of the seat occupant meets or exceeds a specified amount. Complaint ¶7. Plaintiff's alleged invention is claimed in the '677 patent. Olson Decl. Ex. 1.

### C. Ford is Located in Michigan.

Ford is an automobile manufacturer organized under the laws of the State of Delaware and headquartered in Dearborn, Michigan. Olson Decl. ¶ 3. Ford designs and manufactures automobiles and commercial vehicles sold under the brand names of Ford, Mercury, Lincoln, Jaguar, Landrover and Volvo, among others. *Id.* Ford's engineering centers and its purchasing, sales, marketing, and finance departments are located in Dearborn, Michigan. *Id.* ¶ 4. Ford's manufacturing plants are principally located in Michigan, with other sites throughout the Midwest and Canada. *Id.*

Ford did not design, develop, or manufacture the Accused Product. Olson Decl. ¶ 7. Instead, it purchases the system from Delphi Corporation ("Delphi"). *Id.* Ford did evaluate and test the Accused Product at its engineering centers located in Michigan. *Id.* ¶ 8. Ford's purchasing department, located in Michigan, negotiated and executed the agreements under which it purchases the Accused Product. *Id.* Ford's manufacturing group, located in Michigan, coordinates the manufacture of vehicles installed with the Accused Product; many of these vehicles are built in assembly plants in Michigan. *Id.* Additionally, Ford's sales department that markets and sells its vehicles that contain the Accused Product and its finance department that accounts for the sales and purchase of the Accused Product are located in Michigan. *Id.* Ford's

3

technical employees with direct knowledge of design, use, operation and testing of the Accused Product include Steve Kosiak, Bill Olson and Abe Phillip. *Id.* ¶ 9. Ford employee Jack Mackie has direct knowledge of Ford's purchase of the Accused Product. Olson Decl. ¶ 9. All of these employees work in Dearborn, Michigan and live nearby. *Id.*

### D. The Accused Product Supplier, Delphi Corporation, Resides in Michigan.

Delphi designed, developed, manufactures and sells the Accused Product. Olson Decl. ¶ 13. Delphi is a Tier-1 automotive supplier located in Troy, Michigan, a suburb of Detroit. *Id.* ¶ 7. Delphi refers to the Accused Product as PODS – passive occupant detection system. *Id.* ¶ 13. Delphi's employees with knowledge of the Accused Product work in Troy, Michigan and include Dan Salmons, the Delphi product manager that worked with Ford to implement the Accused Product on Ford vehicles. *Id.* Delphi's documents relating to the design, development, testing, manufacture, marketing, and sales of the Accused Product are located in Troy, Michigan. *Id.* ¶ 14. On October 8, 2005, Delphi filed for Chapter 11 bankruptcy protection. *Id.* ¶ 15.

Delphi has previously defended the Accused Product against a patent infringement lawsuit filed in the Federal Court for the Eastern District of Michigan. Olson Decl. Ex. 2. In September 2004, Judge Lawrence Zatkoff, in the case entitled *Automotive Tech. Int'l v. Delphi Corp*, Civil No. 03-71368, entered summary judgment of noninfringement of the Accused Product over a patent asserted by Automotive Technology, International ("ATI"). *Id.* ATI is located in Rochester Hills, Michigan, a suburb of Detroit. Olson Decl. ¶ 16.

### E. A Purportedly Critical Witness Relating To Plaintiff's Allegations Against Ford Likely Resides in Michigan.

As part of its claim against Ford, Fleming contends that he disclosed his invention to Ford in 1996, and Ford misappropriated his invention. The Complaint states:

4

> In 1996, Plaintiff Fleming disclosed the invention to Defendant Ford under a non-disclosure agreement. In violation of this agreement and the '677 patent, Ford has appropriated this technology for itself and is using the technology in its vehicles. It appears that Defendant Ford realized the advantages provided by the Fleming technology with respect to reliability and low cost and has illegally adopted the technology as its own.

Complaint ¶ 11. More specifically, Fleming identified that he disclosed the invention to Mr. David Fu, allegedly a representative of Ford. Olson Decl. Ex. 3, ¶ 4. According to Fleming, Mr. Fu was to have Ford purchase Mr. Fleming's technology; an event that never occurred. Complaint, ¶ 11. Ford has no record of employing Mr. Fu, the alleged nondisclosure agreement between the parties, or receiving or using any information from Fleming about his alleged invention. Olson Decl. ¶¶ 17, 18. Although Ford has no knowledge of David Fu, Mr. Fu may work in the field of automotive occupant detection. He is listed as the inventor of U.S. Patent No. 5,848,661, entitled "Vehicle Seat Assembly Including At Least One Occupant Sensing System and Method of Making Same," issued to Lear Corporation of Southfield, Michigan. Olson Decl. Ex. 4. The patent lists Mr. Fu's residence as Rochester Hills, Michigan. *Id.*

### III.  ARGUMENT

Section 1404(a) states that "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Biochem Pharma, Inc. v. Emory University,* 148 F. Supp.2d 11, 13 (D.D.C 2001) (Roberts, J.). The purpose of Section 1404(a) is to prevent wasting time, energy and money and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). The decision to transfer venue lies in the broad discretion of the district court. *Jumpit, AS v. Why ASAP, LLC*, 2005 WL 607914, *2 (D.D.C. 2005) (citations omitted).

Although plaintiff's choice of forum is ordinarily accorded deference in a venue analysis, "substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum." *U.S. ex rel. Prevensik v. U.S.P.T.O*, 2005 WL 691875, *1 (D.D.C. 2005) (citations omitted) (Roberts, J.); *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp.2d 92, 95 (D.D.C. 2003), citing, *Gemological Inst. of Am., Inc. v. Thi-Dai Phan*, 145 F. Supp.2d 68, 71 (D.D.C. 2001). Additionally, "the Court recognizes the diminished consideration accorded to a plaintiff's choice of forum where ... that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Jumpit, AS*, 2005 WL 607914 at *3 (citations omitted).

When evaluating a motion to transfer under Section 1404(a), a district court should consider "a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Indeed, this Court considers the following factors:

(1) The convenience of the witnesses of the plaintiff and defendant;

(2) Ease of access to sources of proof;

(3) The availability of compulsory processes to compel the attendance of unwilling witnesses;

(4) The amount of expense for willing witnesses;

(5) The relative congestion of the calendars of potential transferor and transferee courts; and

(6) Other practical aspects of expeditiously and conveniently conducting a trial.

*U.S. ex rel. Prevensik*, 2005 WL 691875 at *1; *Jumpit, AS*, 2005 WL 607914 at *2.

In the present case, there can be no dispute that this action could have been brought in the Federal Court in the Eastern District of Michigan because Ford is resident in that District and that District has subject matter jurisdiction because all issues here are a matter of Federal law.

As to the case-specific factors, they weigh heavily in favor of a transfer to Michigan. As discussed in detail below, the Court should transfer the present case to the Eastern District of Michigan because: (1) virtually all Ford employees of who have knowledge of the Accused Product reside and work in Michigan; (2) many third party witnesses who will likely testify at hearings and trial reside and work in Michigan; (3) pertinent documents relating to the Accused Products are located in Michigan; (4) Ford resides in Michigan; (5) Fleming and his principal witness, Mrs. Fleming, reside in Arizona, which is closer to Michigan than the District of Columbia; and (6) practical and judicial efficiency considerations favor the Eastern District of Michigan in this case.

### A.   The Eastern District of Michigan is the Most Convenient Venue for the Party Witnesses.

"The most important factor in passing on a motion to transfer under §1404(a) is the convenience of the witnesses." *Pyrocap,* 259 F. Supp.2d at 97, *citing, Chung v. Chrysler Corp.,* 903 F. Supp. 160, 164 (D.D.C. 1995). Significantly, in the present case, neither Fleming nor Ford's witnesses reside in the District of Columbia. Complaint ¶ 1; Olson Decl. ¶ 10. Instead, all of Ford's witnesses who have knowledge of the design, testing, manufacture, marketing, purchase, sale, accounting and use of the Accused Product reside and work in Michigan. Olson Decl. ¶¶ 9, 10.

Litigating the present case in the District of Columbia will significantly inconvenience Ford's employee witnesses. Ford employee witnesses will have to leave their places of work and homes in Michigan to travel for long periods of time and over-nights to the District of Columbia for hearings, trial and other litigation matters. In addition, these witnesses have broad responsibilities for other Ford products. Olson Decl. ¶ 12. Their ability to carry out their ongoing business obligations related to other products will be significantly impaired if they are

required to travel to the District of Columbia to participate in this litigation. *Id.* Moreover, Ford will incur significant costs from transporting these witnesses to and from the District of Columbia for trial and other litigation related matters. Olson Decl. ¶ 12.

Although not a party, Ford expects that it will call upon Delphi, the supplier of the Accused Product, to support Ford's defense of this action. Like Ford, Delphi is located in the Eastern District of Michigan. Olson Decl. ¶¶ 7, 13. Delphi's headquarters is located in Troy, Michigan, a suburb of Detroit. *Id.* ¶ 7. Daniel Salmons, Delphi's product manager who worked with Ford to implement the use of the Accused Product in Ford vehicles, works in Michigan. Olson Decl. ¶ 13. Mr. Salmons, as well as other Delphi engineers and business persons who likely possess important evidence on matters at issue in the case, work in or near southeastern Michigan. *Id.* ¶ 13. The inconvenience and expense due to travel again makes the Eastern District of Michigan a much more convenient location for Delphi's witnesses to participate in this case than the District of Columbia, to which they have no connection.

Moreover, litigating the present case in Michigan will not cause Fleming any increased expense or inconvenience. Indeed, Plaintiff will likely have only two primary fact witnesses who do not reside in Michigan, Mr. and Mrs. Fleming, both inventors on the '677 patent. Olson Decl. Ex. 1. Plaintiff has already elected to bear the expense and hassle associated with travel by choosing to litigate away from his home in Arizona. If anything, transfer to the Eastern District of Michigan will be more convenient for Fleming because his Arizona home is closer to Detroit than the District of Columbia. Olson Decl. Ex. 5.

As a result, this factor weighs heavily in favor of transferring the present case to the Eastern District of Michigan.

8

**B.     Virtually All of the Pertinent Documents are Located In and Around the Eastern District of Michigan.**

None of Ford's documents or records likely at issue in this case is located in the District of Columbia. Instead, Ford's documents and information relating to the design, testing, manufacture, purchase, and use of the Accused Product exist in the usual course of business in Dearborn, Michigan. Olson Decl. ¶¶ 8, 12. Similarly, Delphi's documents and records regarding the design, development, operation, and manufacture of the Accused Product are located in Troy, Michigan. *Id.* ¶ 14. Furthermore, it is highly unlikely that any of Plaintiff's documents are located in the District of Columbia because Mr. Fleming resides in Arizona and does not have any significant connection, or perhaps any connection whatsoever, to the District of Columbia. Moreover, because Fleming has never manufactured or sold any product allegedly covered by the '677 patent, his records are likely *de minimis* in volume and could just as readily be transported to the Eastern District of Michigan as they could be brought to this District.

Again, this factor weighs in favor of transferring the present case to the Eastern District of Michigan.

**C.     Compulsory Process Available in the Eastern District of Michigan May be Needed to Compel Attendance of A Critical Unwilling Witness.**

Fleming has identified David Fu as a potentially critical witness in this case. According to Plaintiff, Mr. Fleming disclosed his invention to Mr. Fu in 1996, while Mr. Fu was allegedly a Ford employee. Olson Decl. Ex. 3, ¶ 4. Plaintiff further contends that Ford, based on the information disclosed to Mr. Fu, improperly appropriated his invention and adopted it as its own. Complaint ¶ 11. Ford disputes these allegations. Olson Decl. ¶¶ 17, 18. Although Ford does not know Mr. Fu, Ford may have identified him. David Fu is the inventor listed on another patent in the field of occupant detection. Olson Decl. Ex. 4. According to the face of this patent, Mr. Fu

9

worked for Lear Corporation in Southfield, Michigan and resided in Rochester Hills, Michigan. *Id.*

Given the seriousness of Plaintiff's misappropriation allegations, Mr. Fu may be a critical fact witness whose testimony would address the events relating to alleged interactions between Ford and Fleming. This Court has recognized that a preference exists for live testimony from witnesses with personal knowledge whose credibility could be at issue. *Pyrocap*, 259 F. Supp.2d at 98 (citations omitted). Because the parties dispute the existence of the nondisclosure agreement and the conveyance of any information between the parties, the trier of fact will need to evaluate Mr. Fu's testimony and credibility to sort through Plaintiff's allegations. Here, access to the Eastern District of Michigan's subpoena power to compel participation of Mr. Fu, if necessary, heavily favors transfer.

**D.    The Expense of Willing Witnesses Will Be Much Higher to Participate in a Suit Outside of the Eastern District of Michigan.**

The expense to Ford and Delphi, in terms of travel, time and money, favors the Eastern District of Michigan. First, neither party resides in the District of Columbia. Complaint ¶ 1; Olson Decl. ¶ 3. Instead, Ford resides in the Eastern District of Michigan and Plaintiff resides in Arizona. *Id.* In addition, as discussed above, all of the documents and materials relating to the Accused Product are located in Michigan and all of Ford's witnesses reside and work in Michigan. Olson Decl. ¶¶ 8-10. Consequently, if the case remains in the District of Columbia, Ford will incur significant travel and other expenses from transporting its witnesses, documents, and other evidence to hearings and trial in the District of Columbia. *Id.* ¶ 12. Moreover, litigation in the District of Columbia would cause Ford to bear a greater expense in terms of lost

10

employee time away from their duties because of travel and the inconvenience of coordinating travel plans and schedules.[3] *Id.*

Additionally, for the same reasons as above, the expense to Delphi to participate in the case in the District of Columbia will be much greater than if the case is litigated in the Eastern District of Michigan. Moreover, Delphi is in bankruptcy with restricted financial resources. Olson Decl. ¶ 15. With its financial difficulties, significant travel and other expenses to transport its witnesses, documents, and other evidence to hearings and trial in the District of Columbia would be great.

In contrast, Fleming will incur no additional expense and suffer no additional inconvenience if the Court transfers the case to the Eastern District of Michigan. As discussed above, Plaintiff's primary witnesses, himself and Mrs. Fleming, reside in Arizona and have no connection with the District of Columbia. Complaint ¶ 1; Olson Decl. Ex. 1. Moreover, Plaintiff's documents are likely located in Arizona – not the District of Columbia. Because Plaintiff elected to litigate away from his home forum, he must travel and bear that expense no matter what. Any additional inconvenience or expense to Plaintiff associated with litigating this case in Michigan, instead of the District of Columbia, will be insignificant. In fact, the expense and inconvenience may be less because Plaintiff's Arizona home is closer to Detroit than it is to Washington D.C.[4] Again, this factor favors transfer.

---

[3] *See Coloplast A/S v. Amoena Corp.*, 25 U.S.P.Q.2d (BNA) 1549, 1551 (S.D.N.Y. 1992) (basing transfer, in part, on the fact that the defendant's "essential personnel [would] be absent from the plant for extended periods and [defendant's] operations [would] be severely curtailed").

[4] According to Rand McNally's mileage chart, Tucson to Detroit is 2,042 miles and Tucson to Washington D.C. is 2,278 miles, a 236 mile difference. Olson Decl. Ex. 5.

11

  E. **Comparison of the Relative Court Dockets Favor Transfer.**

The speed of case resolution favors transfer to the Eastern District of Michigan. "[I]t is also appropriate for the court to consider the relative docket congestion and potential speed of resolution by the transferor and transferee courts." *Reiffin v. Microsoft Corp.*, 104 F. Supp.2d 48, 57 (D.D.C. 2000). Although a larger number of civil cases are pending in the Eastern District of Michigan, statistics show that the civil cases filed in the Eastern District of Michigan move faster to disposition. According to the most recently available official statistics from the Administrative Office of United States Courts, this District reports a median time from filing to disposition of a civil case of 10.3 months and a median time from filing to trial of a civil case of 27.4 months. Olson Decl. Ex. 6. The Eastern District of Michigan reports median times from filing to disposition and from filing to trial of a civil case of 9.7 months and 22.0 months, respectively. *Id.* On average, civil cases in the Eastern District of Michigan progress faster to resolution than civil cases filed in the District of Columbia. Therefore, this factor also favors transfer of the case to the Eastern District of Michigan.

  F. **Other Practical and Potential Judicial Efficiency Considerations Favor Transfer of the Case to the Eastern District of Michigan.**

Practical and judicial efficiency considerations exist that favors the transfer of this case to Michigan. First, the Michigan Courts will have a local interest in the controversy. "The public-interest factors [in considering transfer] include 'the local interest in deciding local controversies at home.'" *Reiffin*, 104 F. Supp.2d at 52 n. 8. The heart of the issues in this case occurred in southeastern Michigan, not the District of Columbia. Ford designs and sells its vehicles and purchases the Accused Product from Delphi in southeastern Michigan. Olson Decl. ¶ 8. Likewise, Ford's alleged relationship with Plaintiff exists exclusively in Michigan. From Michigan, the parties allegedly entered into a nondisclosure agreement. Olson Decl. ¶¶ 17, 18,

Ex. 3; Complaint ¶ 11. Plaintiff allegedly disclosed his invention to Ford in Michigan. And Ford allegedly violated the parties' agreement and misappropriated Plaintiff's invention in Michigan. Undoubtedly, these allegations place this controversy squarely in Michigan and nowhere else. Overall, no connection exists between the District of Columbia and the issues in this case. Nor does this case involve any issues of national policy or other issues that would favor adjudication in the District of Columbia. *U.S. ex rel. Prevensik*, 2005 WL 691875 at *1 ("This Court is not an appropriate forum when the case does not involve an issue of national policy which would require testimony of high-level agency officials in Washington D.C. ....") (citation omitted).

Second, discovery and trial will be facilitated with adjudication in Michigan. As discussed above, the development, design, testing and purchase of the Accused Product occurred in Michigan. Olson Decl. ¶ 8. Moreover, all of the documents and things regarding the Accused Product reside in Michigan[5], and virtually all of the witnesses that have knowledge of the Accused Product reside in Michigan. Olson Decl. ¶¶ 9-13. Furthermore, many third party witnesses with knowledge of the allegations contained in the Complaint reside in Michigan. *Id.* ¶ 13, Ex. 4. Significantly, a transfer of the present case to the Eastern District of Michigan will ensure the live trial testimony of those potentially important third party witnesses.[6]

Lastly, judicial efficiency supports transfer. The Eastern District of Michigan hears numerous patent cases against automotive-related companies and has advanced familiarity with the law and technologies of these cases. This is especially true here because the Eastern District

---

[5] *See Season Savings Bank, FSB v. Foremost Financial Services Corp.* No. 89-244-R, 1989 U.S. Dist. LEXIS 18062, at *5-6 (E.D. Va. June 23, 1989) ("it is in the interests of justice and efficiency that the case be tried in a district where the relevant documents are most readily available").

[6] *See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991) (fact that a significant number of witnesses were subject to the subpoena power of the transferee court but not the transfer court was a "significant factor" in the court's decision to transfer).

of Michigan, namely Judge Lawrence Zatkoff, has already adjudicated one patent infringement case concerning the Accused Product. Olson Decl. Ex. 2. The court has already expended the resources and time to learn the Accused Product and related technology. This familiarity with the Accused Product would inherently lead to enhanced judicial efficiency. As a result, this factor also favors a transfer to the Eastern District of Michigan.

## IV.   CONCLUSION

For the foregoing reasons, Ford respectfully requests that this Court transfer this action to the Eastern District of Michigan. Such a transfer would be manifestly more convenient to the parties and the witnesses, and would further the interests of justice and judicial economy.

Dated November 2, 2005

KENYON & KENYON

By: _____
John R. Hutchins
Bar No. 456,749
1500 K. Street, N.W., Suite 700
Washington, D.C. 20005
Phone: (202) 220-4217

*Attorneys for Defendant/Counterclaim Plaintiff Ford Motor Company*