UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSEPH A. FLEMING, | } | |
| Plaintiff, | } } } | |
| vs. | } | Case No. 1:05CV01333 |
| FORD MOTOR COMPANY, | } } } | JUDGE: Richard W. Roberts |
| Defendant. | } } } } | DECK TYPE: General Civil |
| | } | DATE STAMP: |

**DECLARATION OF WILLIAM OLSON IN SUPPORT OF DEFENDANT AND COUNTERCLAIM PLAINTIFF FORD MOTOR COMPANY'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1401(A)**

I, William Olsen, make the following declarations:

1. My name is William Olsen, I am over the age of 18, and I make this Declaration upon personal knowledge of the facts contained herein, and could competently testify to the facts herein if called upon to do so at trial.

2. I am employed by Ford Motor Company ("Ford"), as a Technical Specialist. I have been employed by Ford since March 1993, and have served in my current position since October 2004. I reside in the City of Farmington Hills, State of Michigan.

3. Ford is an automobile manufacturer incorporated in Delaware and headquartered in Dearborn, Michigan. Ford designs, manufactures, and sells automobiles and commercial vehicles sold under the brand names of Ford, Mercury, Lincoln, Jaguar, Landrover, Volvo, among others.

1

4. Ford's engineering centers and its purchasing, sales, marketing, and finance departments are located in Dearborn, Michigan. Ford's manufacturing plants are principally located in Michigan, with other sites throughout the Midwest and Canada.

5. As Technical Specialist, my primary responsibilities include developing product specifications and quality standards, and working with suppliers to integrate new technologies into Ford Motor Company vehicles. Because of these responsibilities, I have personal knowledge of the design and operation of the seat occupant classification sensor ("OCS") system used by Ford that is allegedly accused of infringing U.S. Patent No. 5,877,677 (referred to hereafter as the "Accused Product"). A true and correct copy of U.S. Patent No. 5,877,677 is attached as Exhibit 1. I was personally involved with the engineering team that oversaw Ford's evaluation, design, testing, and purchase of the Accused Product.

6. The Accused Product comprises a silicone gel-filled bladder mounted between the passenger seat cushion foam and seat pan, a non-adjustable pressure sensor, and an electronic control unit that is mounted to the seat frame. Pressure exerted on the seat by an occupant or object is transferred to the bladder and sensed by the pressure sensor. The pressure sensor converts the pressure sensed to a voltage value. The voltage value is communicated to the electronic control unit, which determines an occupant classification based on the voltage and data from other vehicle sensors. The control unit communicates the occupant classification to the vehicle's restraint control module, which may disable the use of passenger side airbags in certain circumstances.

7. Ford did not design, develop or manufacture the Accused Product. Ford purchases the Accused Product from Delphi Corporation ("Delphi"). Delphi is a Tier-1 automotive supplier located in Troy, Michigan, a suburb of Detroit.

8.      Ford's association with the Accused Product is based almost exclusively in Michigan. For example, Ford evaluated and tested the Accused Product at its engineering centers located in Michigan. Ford's purchasing department, located in Michigan, negotiated and executed the agreements under which it purchases the Accused Product. Ford's manufacturing group, headquartered in Michigan, coordinates the manufacture of vehicles that are equipped with the Accused Product. Many of the vehicles equipped with the Accused Product are built in Michigan assembly plants. Ford's sales department, that markets and sells its vehicles that contain the Accused Product, is located in Michigan. Ford's finance department that accounts for the sales and purchase of the Accused Product are also located in Michigan.

9.      Ford anticipates a number of its employees will need to participate in this case, including providing testimony at trial. At this time, I know that I and other Ford engineering employees including Steve Kozak and Abe Philip, among others, have direct knowledge of the design, use, testing and operation of the Accused Product. These gentlemen, like me, also have knowledge of the history behind Ford's relationship with Delphi that led to Ford's purchase of the Accused Product and its use on select Ford vehicles. Similarly, I understand that Ford anticipates that the testimony of its employee, Jack Mackie, who has direct knowledge of Ford's purchase of the Accused Product, may also be necessary in this case. All of these gentlemen work in Dearborn, Michigan and live in the greater Detroit metropolitan area.

10.     To the best of my knowledge, Ford's witnesses who have knowledge of the facts surrounding the allegations of this action and the issues involved in this action, work in and reside in or around Dearborn, Michigan

11. I am not aware of any Ford employee or other third parties who would have information pertinent to Fleming's allegations or the Accused Products who resides in the District of Columbia.

12. Ford's witnesses who have knowledge of the Accused Product, including myself, also possess broader responsibilities to other Ford products covering various Ford vehicle platforms. These witnesses' responsiveness to those other obligations, and their ability to carry out ongoing business responsibilities related to other product lines, would be significantly impaired if the witnesses had to travel to and spend time in the District of Columbia on litigation related matters. It is my belief that Ford will incur significant travel and other related expenses, including the irreplaceable cost of lost employee time, if it has to transport its witnesses and documents relating to this litigation to the District of Columbia.

13. Delphi designed, developed, and manufactures the Accused Product sold to Ford. Delphi refers to the Accused Product as PODS (passive occupant detection system). It is my understanding that a number of Delphi employees with knowledge of the Accused Product work in Troy, Michigan. Included in this group is Dan Salmons, the Delphi product manager with whom I have worked to implement the Accused Product in various Ford vehicle models.

14. I am informed that Delphi maintains many documents relating to the design, development, testing, manufacture, marketing, and sale of the Accused Product at its headquarters in Troy, Michigan.

15. From my work in the industry, I know that Delphi filed for Chapter 11 bankruptcy protection on October 8, 2005.

16. I have been informed that another company, Automotive Technologies, International ("ATI") of Rochester Hills, Michigan previously sued Delphi claiming that the Accused Product infringed its patent. A true and accurate copy of the Court's Opinion in that case is attached as Exhibit 2.

17. It is my understanding that Mr. Fleming contends that Ford stole his invention and adopted his technology as its own. I know that not to be true. I worked in the technology area of occupant detection at Ford since Ford began using occupant detection systems for its vehicles. At no time do I recall anyone have communications with Mr. Fleming. I have never seen or used any information from Mr. Fleming or information regarding the technology disclosed in Mr. Fleming's patent at Ford. I also understand that Ford has no record of a nondisclosure agreement between Mr. Fleming and Ford.

18. I reviewed a letter sent by Mr. Fleming's attorney to Ford's attorney identifying Mr. David Fu as the Ford employee to whom Mr. Fleming allegedly disclosed his invention in November 1996. I have never worked with a Mr. Fu at Ford. I also understand that Ford possesses no record of employment of David Fu. I have also never seen or used the information disclosed in the letter that Mr. Fleming claims he sent to Mr. Fu or Ford in November 1996. True and accurate copies of these letters are attached as Exhibit 3.

19. A true and accurate copy of U.S. Patent No. 5,848,661 is attached as Exhibit 4.

20. A true and accurate copy of the mileage chart from the Rand McNally Road Atlas, ©2005, is attached as Exhibit 5.

21. True and accurate copies of the Judicial Caseload Profiles for the district courts for the District of Columbia and the Eastern District of Michigan from the website www.uscourts.gov are attached as Exhibit 6.

Signed under penalty of perjury this 1st day of November 2005, in Dearborn, Michigan.

_____
WILLIAM OLSEN