# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH A. FLEMING, } | |
| } | |
|     Plaintiff, } | |
| } | |
| vs. } | Case No. 1:05CV01333 |
| } | |
| FORD MOTOR COMPANY, } | JUDGE:  Richard W. Roberts |
| } | |
|     Defendant. } | DECK TYPE:  General Civil |
| } | |
| } | DATE STAMP: |

## DEFENDANT AND COUNTERCLAIM PLAINTIFF
## FORD MOTOR COMPANY'S OPPOSITION TO PLAINTIFF FLEMING'S
## MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A)

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND...................................................................................2

III.  ARGUMENT ..........................................................................................................2

       A.    The Private Interest Factors Favor Transfer to Michigan,
             Not Arizona..................................................................................................3

             1.    Convenience of the Parties Favors Michigan, Not Arizona ....................3

             2.    The Plaintiff's Choice of Forum Deserves No Deference .......................6

             3.    Michigan, Not Arizona, is Defendant's Choice of Forum and
                  the Location Where Fleming's Claim Allegedly Arose .........................7

             4.    Convenience of the Witnesses Favors Michigan, Not Arizona ...............9

             5.    Access to Sources of Proof Mandates Transfer to Michigan...................10

       B.    Public Interest Factors Also Heavily Favor Transfer to Michigan,
             Not Arizona................................................................................................11

             1.    Michigan Law May Become an Important Issues, Thus
                  Favoring Transfer to Michigan Over Arizona ........................................12

             2.    Comparison of the Relative Court Dockets Favor Transfer
                  to Michigan ...............................................................................................13

             3.    The Local Interest in Deciding Local Controversies at
                  Home Favors Transfer to Michigan.........................................................14

       C.    Other Considerations .................................................................................15

IV.  CONCLUSION.......................................................................................................15

## INDEX OF AUTHORITIES

**CASE**                                                     **PAGE NO.**

*Biochem Pharma, Inc. v. Emory University*
    148 F. Supp.2d 11, 13 (D.D.C. 2001) ................................................................................ 2

*Froessl v. Expervision*
    1994 U.S. Dist. LEXIS 4791, *7-8 (D.D.C. 1994) ......................................................... 4, 5, 9

*McGinnis v. Eli Lilly and Co.*,
    181 F. Supp.2d 684 (S.D. Tex. 2002) ................................................................................ 7

*McGovern v. Barras*,
    2005 U.S. Dist. LEXIS 5014, *5 (D.D.C. 2005) ................................................................ 7

*Nowicki v. Green*,
    1999 WL 305243, *9-10 (E.D. Pa. 1999) ......................................................................... 4

*Orthoarm, Inc. v. American Orthodontics Corp.*
    2002 U.S. LEXIS 4208, *4 (W.D.N.Y. 2002) ................................................................... 8

*Osan Ltd. v. Accenture LLP*
    2005 U.S. Dist. LEXIS 27488, *7 (D.D.C. 2005) ............................................. 2-3, 6, 10, 12, 14

*Pyrocap Intr'l Corp. v. Ford Motor Co.*,
    259 F. Supp.2d 92 (D.D.C. 2003) .................................................................................. 9, 10

*Reiffin v. Microsoft Corp.*,
    104 F. Supp.2d 48 (D.D.C. 2000) .................................................................................. 13, 14

*Schmidt v. American Institute of Physics*,
    322 F. Supp.2d 28 (D.D.C. 2004) .................................................................................. 7, 12

*Ten West Apparel, Inc. v. Menard, Inc.*
    2000 U.S. Dist. LEXIS 8537, *7 (S.D.N.Y. 2000) ............................................................ 8

*U.S. ex rel. Prevensik v. U.S.P.T.O.*
    2005 WL 691875, *1 (D.D.C. 2005) ................................................................................ 6

**STATUTE**
28 U.S.C. § 1404(a) ............................................................................................................. 1, 3

**MISCELLANEOUS**
Corbin on Contracts § 12.18 ................................................................................................ 12

**I.     INTRODUCTION**

Plaintiff Fleming ("Fleming") and Defendant/Cross-Plaintiff Ford ("Ford") finally at least agree that the District of Columbia is not the proper forum for this patent infringement dispute. Unfortunately, by his instant Motion, Fleming now seeks transfer to the even more distant forum of Arizona. The same reasons why this District is an inappropriate forum apply to the District Court of Arizona. Overall, litigation of this dispute outside of Michigan will compromise Ford's defense by limiting, if not prohibiting, its access to necessary proofs at trial. Most importantly, critical third party witnesses reside in Michigan and will not be subject to the subpoena power of either this District or the District of Arizona. With Fleming seeking $100 million in damages from Ford, Ford must be able to put forth a full defense, which is only possible in the Eastern District of Michigan.

At least the following undisputed facts warrant denying Fleming's Motion to transfer to Arizona and, instead, transferring this case to Michigan:

- No acts related to the controversy occurred in Arizona. The alleged acts of patent infringement and misappropriation occurred in Michigan by Michigan residents, who researched, tested, purchased, and sold the accused product for Michigan companies.

- Many critical third party witnesses, who will likely be called upon to testify at trial, including Delphi Corporation, the supplier of the accused product, and Mr. David Fu, the individual Fleming contends stole his invention for Ford's benefit, reside and work in Michigan.

- No witnesses, other than Fleming himself, reside in Arizona.

Overall, transfer of this case to Arizona is inappropriate and unwarranted under 28 U.S.C. § 1404(a). As explained more fully below, each of the factors to be considered in a § 1404(a)

analysis disfavors transfer to Arizona. Instead, these factors favor transfer of this case to the Eastern District of Michigan as set forth in Ford's Motion to Transfer filed with the Court on November 2, 2005 ("Ford's Motion"). This Court should therefore deny the instant motion and exercise its discretion and transfer this case for the convenience of the parties and witnesses and in the interest of justice to the Eastern District of Michigan.

## II.     FACTUAL BACKGROUND[1]

For economy and brevity, Ford will not repeat the facts underlying the parties' dispute as it relates to transfer. These facts are specifically set forth in Ford's Motion and fully supported by the Declaration of William Olson, both filed with the Court on November 2, 2005. The facts set forth by Mr. Olson in his declaration, supporting transfer of this case to the Eastern District of Michigan, remain unchanged and equally apply to establish the inconvenience and hardship to Ford to litigate this dispute in either the District of Columbia or Arizona. Importantly, nowhere in Fleming's Motion to Transfer ("Fleming's Motion), or in Fleming's Opposition to Ford's Motion ("Fleming's Opposition") does Fleming dispute any facts asserted in Ford's Motion or the Olson Declaration.

## III.    ARGUMENT

Section 1404(a) states that "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Biochem Pharma, Inc. v. Emory University,* 148 F. Supp.2d 11, 13 (D.D.C 2001) (Roberts, J.). Fleming, as the moving party, bears the burden of persuasion to prove that transfer to the Arizona Court is warranted. *Osan*

---

[1] The facts set forth in this Opposition are supported by the Declaration of William Olson, filed concurrently with Ford's Motion to Transfer on November 2, 2005. Reference to the Declaration of William Olson and the exhibits attached thereto in his Opposition are designated as "Olson Decl., ¶ _" or "Olson Decl. Ex. _," respectively.

2

*Ltd. v. Accenture LLP*, 2005 U.S. Dist. LEXIS 27488, *7 (D.D.C. 2005) (Roberts, J.). Although largely absent from Fleming's Motion and Opposition, a transfer analysis under § 1404(a) requires a district court to consider and balance a number of case-specific factors, constituting private and public interests. *Id.* The remainder of this brief will address these private and public interests, which when balanced conclude that transfer of this case to the Eastern District of Michigan is appropriate over transfer to Arizona as requested by Fleming.

**A.    The Private Interest Factors Favor Transfer to Michigan, Not Arizona.**

In evaluating a request to transfer, this Court considers six categories of private interests. These factors include:

(1)    The plaintiff's choice of forum;

(2)    The defendant's choice of forum;

(3)    Where the claim arose;

(4)    The convenience of the parties;

(5)    The convenience of the witnesses; and

(6)    The ease of access to sources of proof.

*Osan LTD.*, 2005 U.S. Dist. LEXIS 27488 at *12. As set forth in the analysis below, each of these factors supports denial of Fleming's Motion and directs transfer of this case to the Eastern District of Michigan as requested by Ford. Since Mr. Fleming's motion addresses only one of these factors, the convenience of the parties, this is the first factor that Ford will address.

**1.    Convenience of the Parties Favors Michigan, Not Arizona.**

The entire thrust of Fleming's Motion to transfer is based on Fleming's wife's unfortunate illness. Simply, Fleming contends that his wife's illness requires that he provide 24-hour care. Because of his family responsibilities, Fleming argues that the case must be

3

transferred to Arizona or he will be unable to participate in the litigation. However, this emotional plea alone does not justify transfer of this case to Arizona. *Cf. Froessl v. Expervision*, 1994 U.S. Dist. LEXIS 4791, *7-8, (D.D.C. 1994) (Finding the plaintiff's physical and financial constraints are not so burdensome as to prevent transfer of the case to California); *Nowicki v. Green,* 1999 WL 305243, *9-10 (E.D. Pa. 1999) (Defendant's poor health, compromising his ability to travel, did not justify case transfer.) It is terrible that Mr. Fleming, after having initiated a major lawsuit against Ford in the District of Columbia, must now also deal with the recent worsening of his wife's longstanding illness at home in Arizona. However, even assuming that Mrs. Fleming at present requires constant home care,[2] Mr. Fleming's assertion that Arizona is the only location where trial can fairly be held is clearly wrong. In fact, as explained below, a transfer to Arizona will not alleviate Mr. Fleming's personal situation, and a transfer to Michigan will not unfairly burden Mr. Fleming.

To begin with, were this case to be transferred to the Eastern District of Michigan, Judge Zatkoff could, if need be, take Mr. Fleming's personal situation into account when issuing (likely a few months from now) a scheduling order, so as to minimize any burden placed on Mr. Fleming.[3] Indeed, Judge Zatkoff could grant Mr. Fleming a stay in order to care for his wife, were such a stay requested. The key point is that Mr. Fleming could certainly obtain fair treatment, and a fair resolution of this case, in the Eastern District of Michigan, his wife's present illness notwithstanding.

Moreover, given the mechanics of modern litigation practice, Mr. Fleming will be able to spend the same amount of time dealing with his wife's present illness regardless of whether the

---

[2] It is unclear that Mr. Fleming is the sole person who can provide this care.

[3] For its part, Ford has offered to allow Mr. Fleming to dismiss his case without prejudice, for as long as he would like, so that he could focus on caring for his wife, provided that he would agree to refile the case in the Eastern District of Michigan. Mr. Fleming rejected Ford's offer.

case is heard in Michigan or Arizona. Other than trial (which will not occur for at least a year or two) and potentially some motion practice, the great bulk of the litigation activity will not occur in the courtroom, wherever it is located. Independent of venue, discovery of Fleming will occur in Arizona and discovery of Ford and third parties will occur in Michigan. As for experts, such witnesses will also likely be prepared and deposed outside of Arizona. Transfer of this case to Arizona will undoubtedly be more convenient for Fleming when the case is actually tried, perhaps in 2007, but it will not enable him in any manner to litigate this case from home, or spend more time in the near term taking care of his wife. To fully participate in this case (if he so chooses), Fleming will be spending days and nights in Michigan or elsewhere to attend depositions or to review documents and will be forced to make alternative arrangements for his wife regardless of where trial occurs.

However, if the case is not transferred to the Eastern District of Michigan, Ford will be not just inconvenienced but directly prejudiced. Importantly, Ford would be denied access to critical, third party witnesses who may not be available to testify at trial in Arizona. *Froessl,* 1994 U.S. Dist. LEXIS 4791 at *9 (Access to non-party witnesses is an important consideration.) This is especially true of Mr. Fu, allegedly the only link between Fleming and Ford. Ford has no control over Mr. Fu and cannot compel his participation in any forum outside of Michigan. Ford likewise does not control Delphi or its witnesses. Additionally, materials and equipment related to Ford's defense may not be accessible in Arizona. For example, Ford engineering centers maintain test equipment that Ford may elect to use to demonstrate the operation of the accused product. Potentially, as part of its defense, Ford may request an on-site jury visit to its engineering center to demonstrate the accused product and its vehicle applications. Such demonstrations may not be feasible or practical to duplicate in an Arizona courtroom.

Overall, Fleming accuses Ford of egregious acts, claims $100 million in damages, and attacks Ford's reputation. Under such charges, Ford must have uncompromised access to the tools enabled by the Federal Rules of Civil Procedure, including the Court's subpoena power, to present its trial defense. This can be accomplished only by holding trial in Michigan.

### 2. The Plaintiff's Choice of Forum Deserves No Deference.

"A plaintiff's choice of forum is generally accorded deference, except when, as here, the claims arose elsewhere or the plaintiff is not a resident of and does not have any substantial connection to the forum." *Osan Ltd.*, 2005 U.S. Dist. LEXIS 27488 at *12 (citations omitted); *U.S. ex rel. Prevensik v. U.S.P.T.O*, 2005 WL 691875, *1 (D.D.C. 2005) (citations omitted) (Roberts, J.). Here, Fleming selected the District of Columbia as his forum of choice. There is no dispute that Fleming is not a resident of this District or that the District of Columbia has no connection whatsoever with the controversy. See also Ford's Motion at pp. 7-8. Similarly, there is no evidence that Arizona has any connection with the dispute between the parties. Instead all the evidence before the Court clearly points to Michigan as the location of the controversy. It is in Michigan where Ford purchased and tested the accused product, where Delphi Corporation ("Delphi"), Ford's supplier, designed, developed, and sold the accused product, where Fleming allegedly entered into a confidentiality agreement with Ford under which he disclosed his invention in 1996, and where Ford allegedly misappropriated Fleming's allegedly confidential information thereafter. Complaint, ¶ 11; Olson Decl. §§ 8-10, 13, 17-18.

Although not specified in Fleming's Motion, Fleming may contend that this factor favors transfer to Arizona because Fleming resides there. However, Fleming's residence in Arizona does not swing this factor to Fleming's favor. First, cases decided under § 1404(a) "have laid much less emphasis on this [residence] factor" of the plaintiff. *Schmidt v. American Institute of*

6

*Physics,* 322 F. Supp.2d 28, 34 (D.D.C. 2004) (citation omitted).  Second, Fleming originally elected to forsake his home forum when he filed suit over 2,000 miles from home in this District over seven months ago.  Although Fleming never explains why he filed suit here, he did so; now his second choice forum, Arizona, should not be entitled to any deference when balancing factors in this dispute.

    **3. Michigan, Not Arizona, Is Defendant's Choice of Forum and the Location Where Fleming's Claim Allegedly Arose.**

  For all the reasons set for in Ford's Motion, Ford's choice of forum, the Eastern District of Michigan, is the only appropriate forum for this dispute.  Besides Michigan being the residence of Ford and its witnesses who will likely testify and the location of the great bulk of the documentary evidence in this case, Michigan is, undisputedly, the nexus of controversy.  Olson Decl., ¶¶ 3, 4, 7-10, 13-14; *Schmidt,* 322 F. Supp.2d at 34 (The fact that relevant documents, witnesses, and defendant's corporate officers are located in the transferee forum supports transfer.)  Courts generally consider the place of the alleged wrong to be a very important factor in venue determination.  *McGinnis v. Eli Lilly and Co.,* 181 F. Supp.2d 684, 690 (S.D. Tex. 2002); *McGovern v. Barras,* 2005 U.S. Dist. LEXIS 5014, *5 (D.D.C. 2005) (Finding that the claims and facts that underlie the complaint arose exclusively from conduct that allegedly occurred in the transferee forum justified transfer.)  According to Fleming, in 1996 he allegedly contacted Ford about this invention, allegedly entered into a confidentiality agreement with Ford, and allegedly disclosed this invention under the confidentiality agreement.  Fleming's Motion, p. 5; Complaint, ¶ 11.  All these events occurred exclusively in Michigan.  Fleming further alleges that following his disclosure, Ford misappropriated the Fleming invention to build the accused product.  *Id.*  Because Ford's product research and engineering centers are located in Michigan, these alleged acts likewise must have occurred there.  Olson Decl., ¶¶ 4, 8.

7

Courts have routinely recognized that the center of gravity of an infringement claim is the district where the alleged infringement occurred. *Ten West Apparel, Inc. v. Menard, Inc.*, 2000 U.S. Dist. LEXIS 8537, *7 (S.D.N.Y. 2000) (citation omitted); *Orthoarm, Inc. v. American Orthodontics Corp.*, 2002 U.S. LEXIS 4208, *4 (W.D.N.Y 2002) ([I]n a patent infringement case the locus of operative facts is where the allegedly infringing product was designed and developed.) Here, it is undisputed that all material events, including the alleged acts of infringement by Ford, occurred in Michigan and not in Arizona or in the District of Columbia. If Ford misappropriated Mr. Fleming's invention as contended, these acts occurred in Michigan and nowhere else. Ford evaluated and tested the accused product in Michigan and assembled, sold, marketed, and accounted for vehicles containing the accused product in Michigan. Olson Decl., ¶ 8. Ford also purchased the accused product from its supplier, Delphi, which also resides in Michigan. Olson Decl., ¶ 7. The unconverted record establishes that both Ford and Delphi's witnesses and records relating to the accused product are located in Michigan. Olson Decl., ¶¶ 8-10, 13. Undoubtedly, Fleming's infringement claim arose in Michigan, setting Michigan at the heart of the controversy.

In contrast to the overwhelming evidence linking Michigan to the dispute, Fleming offers no evidence or argument that Arizona has any connection to the allegations set forth in Fleming's complaint. Accordingly, Michigan, the locus of operative facts of Fleming's claims, is the proper forum for the dispute. These factors heavily favor transfer there and denial of Fleming's Motion to transfer to Arizona, which has no connection to the controversy.

### 4.    Convenience of the Witnesses Favors Michigan, Not Arizona.

"The most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." *Pyrocap Int'l Corp. v. Ford Motor Co.,* 259 F. Supp.2d at 92, 97

(D.D.C. 2003), *citing, Chung v. Chrysler Corp.,* 903 F. Supp. 160, 164 (D.D.C. 1995). Significantly, other than himself, Fleming identifies no witnesses that reside in Arizona. Complaint, ¶ 1. In contrast, all of Ford's witnesses, who have knowledge of the design, testing, manufacture, marketing, purchase, sale, accounting and use of the accused product, reside and work in Michigan. Olson Decl. ¶¶ 9, 10.

As explained in Ford's Motion, all of Ford's witnesses will be significantly inconvenienced if this case does not proceed in the Eastern District of Michigan. See Ford's Motion at pp. 7-8; Olson Decl., ¶¶ 9, 12. However, these same witnesses will be even more inconvenienced if required to participate in this litigation in Arizona. Undoubtedly, this increased distance will increase Ford's travel cost, impact workers' productivity as the increased travel will mean more time away from the office, and significantly interfere with the witnesses' personal lives because overnight travel would result. *Froessl,* 1994 U.S. Dist. LEXIS 4791 at *8. (Finding that where a substantial majority of a defendant's employees reside in the transferee forum, transfer is merited to avoid the burden and disruption for the witnesses and the defendant.) Ford's witnesses may well have responsibilities at home, like child or elderly care, that undoubtedly would be complicated if required to travel and participate in this case far from home in Arizona. In the same manner, third party witnesses, including employees of Delphi and Mr. David Fu, assuming Ford can even arrange for their cooperation in this matter, would be similarly inconvenienced.

In contrast, Fleming identified no witnesses living in Michigan or Arizona that are important to his case. With no witnesses to call, no Fleming witness would be inconvenienced by litigating this dispute in Michigan, instead of Arizona. Again, this factor heavily favors transfer of the case to Michigan over transfer to Arizona.

9

### 5. Access to Sources of Proof Mandates Transfer to Michigan

A party's access to its proofs is a critical factor. *Osan Ltd.*, 2005 U.S. Dist. LEXIS 27488 at *14, *citing*, *Trout Unlimited v. U.S. Dep't of Agric.,* 944 F. Supp. 13, 16 (D.D.C. 1996) (noting that the importance of witness convenience arises when the witness may actually be unavailable for trial in one of the fora). "Courts have consistently transferred actions when the majority of witnesses live near the transferee forum, or when the witnesses may not be subject to the subpoena power of the transferor court." *Pyrocap,* 259 F. Supp.2d at 98 (citation omitted). Ford requires the subpoena power of the Eastern District of Michigan court to insure that critical third party witnesses will be at trial to testify. Fleming has identified David Fu as a critical witness in this case. According to Plaintiff, Mr. Fleming disclosed his invention to Mr. Fu in 1996, while Mr. Fu was allegedly a Ford employee. Fleming's Motion, p. 5, ¶ 1; Olson Decl., Ex. 3, ¶ 4. Fleming further contends that Ford, based on the information disclosed to Mr. Fu, improperly appropriated his invention and adopted it as its own. Complaint, ¶ 11. Mr. Fu is not a Ford employee, but he does reside in southeastern Michigan.[4]

Given Fleming's misappropriation allegations, Mr. Fu will likely be a critical fact witness whose testimony would address the events relating to alleged interactions between Ford and Fleming. This Court has recognized that a preference exists for live testimony from witnesses with personal knowledge whose credibility could be at issue. *Pyrocap,* 259 F. Supp.2d at 98 (citations omitted). Because the parties dispute the existence of the nondisclosure agreement and the conveyance of any information between the parties, the trier of fact will need to evaluate Mr. Fu's testimony and creditability to sort through Plaintiff's allegations.

---

[4] According to information conveyed by Fleming to Ford during the course of this litigation, Fleming confirmed that Mr. Fu lives in Michigan.

In the same manner, Ford does not control witnesses of Delphi, including Daniel Salmons, who would be called at trial to testify about Delphi's design, development, research, and manufacture of the accused product and its sale to Ford. Olson Decl., ¶ 13. Fleming's motion does not account for the potential unavailability of Delphi witnesses at trial. Fleming argues that Delphi will make the witnesses available in Arizona because Delphi and Ford are business partners. However, Fleming would have Ford hinge the defense of its case on a favor from Delphi. It is conceivable that Delphi would not be in a position to cooperate with Ford when this matter goes to trial. In October 2005, Delphi filed for bankruptcy. Olson Decl., ¶ 15. There is no guarantee that Delphi will emerge from bankruptcy. If Delphi fails or lays off employees, it is very possible that critical witnesses may no longer be under Delphi's control. In such circumstances, Ford will need the subpoena power of the Eastern District of Michigan court to compel necessary witness participation.

In contrast, the subpoena power of the Arizona court will be useless. No third party witnesses reside in Arizona or within 100 miles of its jurisdiction. In the Arizona court, Ford would be denied the important tool of witness participation through compulsory processes. For this reason alone, the Court should not transfer this case to Arizona and instead transfer it to Michigan.

**B.     Public Interest Factors Also Heavily Favor Transfer to Michigan, Not Arizona.**

In addition to the private interest factors discussed above, the Court also considers and balances three public interest factors when considering the merit of a transfer request under § 1404(a). *Osan Ltd.,* 2005 U.S. Dist. LEXIS 27488 at *15. In particular, the public interest factors considered include:

(1)     The transferee court's familiarity with governing law;

(2) The relative congestion of the courts involved; and

(3) The local interest in deciding local controversies at home.

*Id.*

### 1. Michigan Law May Become an Important Issue, Thus Favoring Transfer to Michigan Over Arizona.

Although there is no question that either the Michigan or Arizona courts could aptly apply federal patent law covering Fleming's patent infringement claim, Fleming's allegations of misappropriation constitute a different matter. These allegations are based on a confidentiality agreement allegedly reached between the parties. Complaint, ¶ 11. To date, Fleming has not produced a copy of this agreement, and Ford disputes its existence. Olson Decl., ¶ 18. Nonetheless, a court may ultimately need to address the issue of whether an enforceable agreement exists, and if so, under what terms. In such a case, state contract law will apply. This District's choice of law rules dictate that the law governing a state law claim is the law of the state with most significant relationship to the matter at issue. *Osan Ltd.*, 2005 U.S. Dist. LEXIS 27488 at *15-16, *citing*, *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 8 (D.D.C. 1996); see also 4-12, Corbin on Contracts § 12.18 (Under the general contracts choice-of-law rules of the second Restatement of Conflicts, in the absence of effective designation by the parties, the applicable law is that of the state with the "most significant relationship to the transaction and the parties."). "[T]he public interest is 'best served by having a case decided by the federal court in the state whose laws govern the interests at stake.'" *Schmidt,* 322 F. Supp.2d at 35 (citation omitted). Because the alleged confidentiality agreement would have been negotiated and executed in Michigan, and the alleged disclosure and violation thereunder occurred in Michigan, Michigan law would apply. It is a safe presumption that a Michigan court would be more familiar with Michigan law than its sister court in Arizona.

12

Additionally, the Michigan Court is more familiar with issues central to this case than any other court. The Eastern District of Michigan hears numerous patent cases involving automotive-related companies and has advanced familiarity with the law and technologies of these cases. This is especially true here because the Eastern District of Michigan, namely Judge Lawrence Zatkoff, has already adjudicated one patent infringement case concerning the accused product. Olson Decl., Ex. 2. Although Judge Zatkoff may not be familiar with the Fleming patent specifically, he is familiar with the accused product and related technology, which would inherently lead to enhanced judicial efficiency. As a result, this factor also favors a transfer to the Eastern District of Michigan.

### 2. Comparison of the Relative Court Dockets Favor Transfer to Michigan.

The speed of case resolution favors transfer to the Eastern District of Michigan. "[I]t is also appropriate for the court to consider the relative docket congestion and potential speed of resolution by the transferor and transferee courts." *Reiffin v. Microsoft Corp.*, 104 F. Supp.2d 48, 57 (D.D.C. 2000). Although a larger number of civil cases are pending in the Eastern District of Michigan, statistics show that the civil cases filed in the Eastern District of Michigan move faster to disposition than civil cases filed in Arizona. According to the 2005 official statistics from the Administrative Office of United States Courts, the District of Arizona reports a median time from filing to disposition of a civil case of 10.2 months and a median time from filing to trial of a civil case of 31 months. See Ex. A, attached. The Eastern District of Michigan reports median times from filing to disposition and from filing to trial of a civil case of 9.9 months and 22.0 months, respectively. See Ex. B, attached. Significantly, on average, civil cases in the Eastern District of Michigan progress to trial nearly eight months faster than civil

13

cases filed in the District of Arizona. Therefore, this factor also favors transfer of the case to the Eastern District of Michigan over transfer to Arizona.

### 3. The Local Interest in Deciding Local Controversies at Home Favors Transfer to Michigan.

Undisputedly, the Michigan court will have a local interest in the controversy. "The public-interest factors [in considering transfer] include 'the local interest in deciding local controversies at home.'" *Osan Ltd.,* 2005 U.S. Dist. LEXIS 27488, *17; *Reiffin*, 104 F. Supp.2d at 52 n. 8. The heart of the issues in this case occurred in southeastern Michigan, not the District of Arizona. Ford designs and sells its vehicles and purchases the accused product from Delphi in southeastern Michigan. Olson Decl., ¶¶ 8, 13. Likewise, Ford's alleged relationship with Fleming exists exclusively in Michigan. From Michigan, the parties allegedly entered into a nondisclosure agreement. Olson Decl., ¶¶ 17, 18, Ex. 3; Complaint, ¶ 11; Fleming's Motion, p. 5. Fleming allegedly disclosed his invention to Ford in Michigan. *Id.* And Ford allegedly violated the parties' agreement and misappropriated Plaintiff's invention in Michigan. *Id.* Undoubtedly, these allegations place this controversy squarely in Michigan and nowhere else.

In contrast, this matter is not a controversy linked to Arizona. No acts of the parties related to the asserted and alleged claims occurred in Arizona or touch upon Arizona law. Arizona's only connection overall to this matter is as Fleming's residence, but that alone is not meaningfully related to the controversy, especially when Fleming elected not to litigate the dispute there in the first place. Again, this factor favors transfer to Michigan, not Arizona.

### C. Other Considerations

Mr. Fleming contends that transfer to Arizona is his only option. That is plainly not so. Upon learning of Mrs. Fleming's health issues in Fleming's Opposition, Ford offered to permit Fleming to dismiss the case without prejudice so that he could care for his wife without the

14

burdens of the litigation. Ford asked Fleming only to agree to refile his case, when he chooses to do so, in the Eastern District of Michigan so that Ford may have access to its sources of proof needed to provide for its defense. Fleming rejected Ford's proposal. Moreover, even if this case is transferred to Michigan, other options exist that could address Fleming's inconvenience issues. For example, Fleming could seek to stay the case so that he may tend to wife's immediate needs. In short, if Mrs. Fleming needs are as consuming as Fleming suggests, an arrangement can be reached that protects the needs and interests of both parties.

## IV.   CONCLUSION

For the foregoing reasons, Ford respectfully requests that this Court deny Fleming's Motion to transfer the case to Arizona and grant Ford's Motion to transfer this action to the Eastern District of Michigan. Such a transfer would be manifestly more convenient to the parties and the witnesses, and be in the interests of justice and judicial economy.

|  |  |
|---|---|
|  | KENYON & KENYON LLP |
| Dated: February 6, 2006 | By: */s/ John R. Hutchins*<br>John R. Hutchins<br>Bar No. 456,749<br>500 K. Street, N.W., Suite 700<br>Washington, D.C. 20005<br>Phone: (202) 220-4217<br><br>***Attorneys for Defendant/Counterclaim Plaintiff Ford Motor Company*** |

15